FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 28, 2025

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANDREW H.,[1] | No.  2:24-cv-311-EFS |
| Plaintiff, | |
| v. | **ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS** |
| LELAND DUDEK, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Andrew H. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 and Title 16 benefits. Plaintiff claims he is unable to work due to degenerative disc disease, chronic pain syndrome, coronary artery disease/status-post stent placement, arthritis of the right shoulder, asthma, obesity, depressive disorder,

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

anxiety disorder, post-traumatic stress disorder (PTSD), attention-deficit hyperactivity disorder (ADHD), neurocognitive disorder due to traumatic brain injury, and dyslexia. Because the ALJ's evaluation of the medical opinions pertaining to Plaintiff's neurocognitive disorders is not supported by substantial evidence, the ALJ erred. This matter is remanded for further proceedings.

## I.    Background

Claiming an inability to work due in part to herniated discs in his back and bone spurs, traumatic brain injury, dyslexia, reactive airway disease, memory issues, and ADHD, Plaintiff applied for benefits under Titles 2 and 16, with an alleged onset date of September 1, 2022.[2]

After the agency denied benefits at the initial and reconsideration stages,[3] ALJ Jeffrey Holappa held a telephone hearing in May 2024, at which Plaintiff and a vocational expert testified.[4] Plaintiff testified that

---

[2] AR 276-284, 285-303, 365.

[3] AR 153-157, 158-162, 174-177, 178-181.

[4] AR 45-81.

he is divorced and lives alone in a camper.[5]  He receives food stamps, money from the state and help from his parents.[6] He is 5'9" and weighs 235 pounds.[7] He said he graduated high school but had not additional college or vocational training.[8] He testified that he last worked at a manufacturing company in September 2022.[9] He was working as a welder and lifted heavy pieces of steel and prior to that he ran a forklift.[10] He said he got a hernia from the heavy lifting involved.[11] Prior to that, he worked as an excavator at a metal recycling plant where he lifted up to 100 pounds.[12] He worked at a farm as a welder as

---

[5] AR 52.

[6] *Id.*

[7] *Id.*

[8] AR 53.

[9] AR 53-54.

[10] AR 54-55.

[11] AR 56.

[12] AR 57-58.

DISPOSITIVE ORDER - 3

well.[13] Plaintiff said that his work as a welder made his heart condition worse and that he has ongoing symptoms of fatigue and angina.[14]

Plaintiff testified that when he was working he had to use his prescription for nitroglycerin more frequently, about twice a week and that he has also used it since stopping work when he exerts himself by walking or lifting.[15]  Plaintiff said that when he goes to his son's baseball games he gets shortness of breath and chest pain when walking across the parking lot, which is less than a city block.[16]

Plaintiff testified that he has had problems with his back since September 2022.[17] He said that when he overexerts he has spasms and pain.[18] When working, he had to take more pain medication.[19] He said

---

[13] AR 58.

[14] AR 63.

[15] AR 63-64.

[16] *Id.*

[17] AR 64-65.

[18] AR 65.

[19] *Id.*

he also used heating pads and ice.[20] The ALJ then came on and said he had dropped from the call and last heard testimony regarding Plaintiff's earnings.[21] Plaintiff's attorney summarized Plaintiff's testimony for the ALJ.[22]

Plaintiff then testified that he felt the muscle spasms in his lower back and sometimes in his shoulder and that even the walking, standing, and lifting of shopping can cause the pain.[23] Plaintiff said he can sit for 20 minutes without pain and stand or walk for 10 to 15 minutes.[24] He said that his depression also worsened when he attempted to work and that he felt like a failure when he could not.[25] He said he got fired from his last job because he lost his temper.[26] He said that he gets irritated

---

[20] *Id.*

[21] AR 65-66.

[22] AR 66-68.

[23] AR 68.

[24] AR 69.

[25] *Id.*

[26] *Id.*

easily and does not like to go out. [27] He testified that he also gets frustrated that he has problems with his concentration and memory and that his temper flares because of it.[28] He said he has low energy because he does not sleep well and that he naps for 1-3 hours a day.[29] He also said his hygiene is poor and that he eats only once a day.[30] He said the most he could lift and carry is a gallon of milk.[31] He said he could not lift the milk for two hours or more.[32] He said there are days he will just lie down or sit all day.[33]

---

[27] AR 70.

[28] *Id*.

[29] AR 70-71.

[30] AR 71.

[31] AR 72.

[32] AR 73.

[33] *Id*.

The ALJ issued a decision denying benefits.[34] The ALJ found Plaintiff's alleged symptoms unsupported by the medical evidence and his activities.[35] As to the medical opinions, the ALJ found:

- The reviewing opinion of Matthew C., PsyD, to be persuasive.

- The reviewing opinions of John W., PhD; Gordon H., MD; and Linda S., MD, PhD, to be partially persuasive.

- The examining opinions of Ryan Agostinelli, PA-C; Thomas Genthe, PhD; and Eric Aronsohn, PA-C, to be not persuasive.[36]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2025.

- Step one: Plaintiff has not engaged in substantial gainful activity since September 1, 2022, the alleged onset date.

---

[34] AR 14-44. Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[35] AR 27-35.

[36] AR 45–47.

- Step two: Plaintiff had the following medically determinable severe impairments: degenerative disc disease of the lumbar spine, chronic pain syndrome, coronary artery disease/status-post stent placement, osteoarthritis of the right shoulder, asthma/reactive airway disease, obesity, major depressive disorder with anxious distress, PTSD, ADHD, major neurocognitive disorder due to traumatic brain injury (TBI), and dyslexia.

- Step three: Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff has the RFC to perform less than the full range of light work in that:

  > [He] is limited to lifting and carrying up to 20 pounds occasionally and 10 pounds frequently. He is able to sit for up to six hours in an eight-hour workday. [Plaintiff] has the following additional limitations: he is able to stand and/or walk for four hours during an eight-hour workday. [Plaintiff] is able to push and pull within the lift and carry limitations. [Plaintiff] is able to climb ramps and stairs occasionally, but he must never climb ladders or scaffolds. [Plaintiff] is able to perform occasional balancing, stooping, kneeling, crouching and crawling. He is also limited to frequent bilateral reaching, handling, fingering, and feeling.

> [Plaintiff] is further limited to occasional exposure to extreme cold, extreme heat, vibration, dust, odors, fumes, pulmonary irritants, and no exposure to unprotected heights or moving mechanical parts. Finally, [Plaintiff] is limited to understanding, remembering, and carrying out simple instructions, making simple work-related decisions, dealing with occasional changes in a routine work setting, maintaining concentration, persistence, and pace for at least two-hour intervals over a normal eight-hour workday, 40-hour workweek, with standard breaks, occasional interactions with supervisors and co-workers, but no interaction with the general public.

- Step four: Plaintiff was not capable of performing past relevant work as a casting repairer, an arc welder, an operating engineer, and a farm equipment mechanic.

- Step five: Plaintiff is capable of performing work as a collator operator, an inspector, an assembler, and an office clerk.[37]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council.[38] Plaintiff timely requested that this Court review the denial of disability.

---

[37] AR 20-38.

[38] AR 271, 1–6.

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error impacted the nondisability determination.[39] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[40]

---

[39] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error— one that "is inconsequential to the ultimate nondisability determination").

[40] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence

### III.  Analysis

Plaintiff argues the ALJ erred when evaluating the opinions of consultative examiners Dr. Genthe and PA-C Agostinelli, as well as treating source PA-C Aronsohn; erred in his evaluation of whether Plaintiff's mental impairments met a listing at step three; erred in rejecting Plaintiff's subjective complaints; and erred at step five as a result of the errors alleged.[41] The Commissioner argues the ALJ's findings regarding the medical opinion evidence and Plaintiff's subjective claims are supported by substantial evidence, that there was no error at step three, and that Plaintiff's claim of error at step five is meritless as it was dependent on prevailing on his prior claims.[42] As is explained below, the ALJ erred when evaluating the medical opinions; on remand, the ALJ is to reevaluate the medical opinions and

---

cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[41] ECF No. 14.

[42] ECF No. 17.

testimony, develop the record as needed, and properly consider Plaintiff's combined impairments.

**A.    Medical Opinions: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ erred by failing to properly consider the supportability and consistency of Dr. Genthe, PA-C Agostinelli, and PA-C Aronsohn's opinions and failed to consider the longitudinal record when evaluating the opinions.  The Commissioner argues the ALJ reasonably articulated his reasoning as to the supportability and consistency of the medical opinions as is required by the new regulations and found them not persuasive.  After considering each of the medical opinions and the reasons for their issuance, the Court determines the ALJ's evaluation of the medical opinion of Dr. Genthe is not supported by substantial evidence.

1.    <u>Standard</u>

The ALJ must consider and articulate how persuasive she found each medical opinion and prior administrative medical finding, including whether the medical opinion or finding was consistent with

and supported by the record.[43] The factors for evaluating the persuasiveness of medical opinions include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[44] Supportability and consistency are the most important factors.[45] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[46]

The regulations define these two required factors as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and

---

[43] 20 C.F.R. §§ 404.1520c, 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[44] 20 C.F.R. §§ 404.1520c, 416.920c(c)(1)–(5).

[45] *Id.* §§ 404.1520c, 416.920c(b)(2).

[46] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

1
2

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[47]

3
4

2.  Dr. Genthe's Examination and Opinion

5
6

On April 19, 2023, Plaintiff was examined by Thomas Genthe,

PhD, at the request of the Commissioner.[48] Plaintiff reported to

7

Dr. Genthe that after a motorcycle accident two years prior he had

8

back issues and difficulty remembering things.[49] Dr. Genthe wrote that

9

he had been asked to evaluate Plaintiff's mental health status, mental

10

health, adaptive level of functioning, and ability to manage funds.[50] He

11
12

wrote that he conducted a diagnostic interview, observed Plaintiff's

behaviors, administered a mental status examination, administered a

13
14

Weschler Memory Scale 4th Edition (WMS-IV) test, and Trailmaking

15
16
17
18

---

19

[47] 20 C.F.R. §§ 404.1520c(1)-(2), 416.920c(c)(1)–(2).

20

[48] AR 856-866.

21

[49] AR 857.

22

[50] Id.

23

Tests A and B, and reviewed medical reports dated July 26, 2021 and October 24, 2022.[51]

Dr. Genthe noted that Plaintiff reported he was divorced and lived alone in a camper, had limited social activity, was not currently receiving mental health treatment or medication but had in the past, had graduated high school with a history of special education services due to dyslexia, was last employed in September 2022 as a welder, and complained that he was slow in processing things and performing tasks and had trouble finding words and engaging in conversation.[52] Plaintiff also reported that he had no hobbies and watches TV, and that he is able to perform self-care such as bathing, feeding himself, and shopping.[53]

Dr. Genthe noted that Plaintiff reported symptoms of depression and anxiety such as loneliness, tearfulness, anhedonia, irritability, isolation, and difficulty concentrating; reported a history of trauma and

---

[51] *Id.*

[52] AR 857-858.

[53] AR 859.

symptoms consistent with PTSD such as being easily startled, avoiding traumatic thoughts, and having anger outbursts; and reported symptoms of ADHD such as being easily distracted, poor follow-through, procrastinating, and being disorganized.[54]

On examination, Plaintiff was well-groomed and cooperative, appeared to be doing his best, had restless psychomotor activity, had poor eye contact, reported an "ok" mood, had constricted affect, showed no disturbance in reality testing, was oriented, recalled 4 of 4 objects immediately, recalled 2 of 4 objects after a five-minute delay, remembered that he "watched TV" the previous day, could not do simple math, could not perform serial 3's, and could not interpret a proverb.[55] Dr. Genthe opined that Plaintiff had fair insight and judgment, fair understanding of his need for treatment, fair understanding of his actions affecting his mental health, and fair understanding of his need for treatment compliance.[56]

---

[54] AR 859-860.

[55] AR 860-861.

[56] AR 861-862.

Dr. Genthe reported the results of the tests administered and indicated that the Trailmaking tests indicated that when performing simple tasks Plaintiff was in the mild to moderately impaired range but when given a multistep task was in the severely impaired range.[57] He explained the interpretation of the WMS-IV as to auditory memory, visual memory, strengths and weaknesses, visual working memory, immediate and delayed memory, retention of information, visual processing, and explained that in each category Plaintiff scored in the extremely low range.[58] Dr. Genthe opined that the test results were a valid assessment of his cognitive functioning.[59] Dr. Genthe explained that Plaintiff was administered 10 subtests of the WMS-IV to get a valid assessment of his cognitive abilities.[60]

Dr. Genthe diagnosed Plaintiff with major depressive disorder with anxious stress, PTSD, ADHD combined presentation, rule-out

---

[57] AR 862.

[58] AR 862-865.

[59] AR 860.

[60] AR 866.

personality disorder, and major neurocognitive disorder due to TBI.[61]

He opined that Plaintiff's prognosis was guarded and he is unlikely to

function in a work setting until his psychiatric conditions were

addressed and opined that it would take no less than 12 months to do

so.[62]

Dr. Genthe opined the following as to Plaintiff's social

functioning:

> [Plaintiff's] ability to interact appropriately with the public
> was assessed as poor. His ability to ask questions and
> accept instructions was assessed as poor. His ability to get
> along with coworkers and/or peers was assessed as poor. His
> ability to respond appropriately to criticism from
> supervisors was assessed as poor. His ability to adhere to
> basic standards of neatness and cleanliness was assessed as
> poor. In consideration of his expressed difficulties dealing
> with the public, he is likely to function best in settings that
> would not require him having to deal with a large number of
> coworkers and/or consumers on an ongoing basis.[63]

Dr. Genthe opined the following as to Plaintiff's ability to perform

work tasks:

_____

[61] AR 865.

[62] *Id.*

[63] AR 865-866.

Based on the aforementioned assessment results, [Plaintiff's] ability to understand and remember short, simple instructions as well as detailed instructions was assessed as severely impaired. His ability to carry out short, simple instructions as well as detailed or complicated instructions in a reasonable amount of time was assessed as severely impaired. His ability to maintain attention and concentration for extended periods of time was assessed as severely impaired. His ability to perform work-like activities at a consistent pace was assessed as severely impaired. His ability to respond appropriately to changes in the work setting was assessed as severely impaired. His ability to be aware of normal work-place hazards and take precautions was assessed as severely impaired. His ability to travel in unfamiliar places, and/or take public transportation was assessed as severely impaired. His ability to set realistic goals and make plans independently from others was assessed as severely impaired. He is unable to maintain a regular work schedule and complete a normal 40-hour work-week, based on the aforementioned criteria.[64]

The ALJ found the opinion of Dr. Genthe to be not persuasive. His evaluation of Dr. Genthe's report and opinion were cursory and superficial, however.

The ALJ described Dr. Genthe's detailed examination report and functional analysis as follows:

The undersigned does note that formal memory testing from an April 2023 consultative examination does reveal "extreme

---

[64] AR 866.

memory" limitations, but during the mental status evaluation, the claimant was able to remember four items immediately, two items after a five-minute delay, and what he did the previous day (Ex. B9F/6, 10, et al.). While these factors clearly support the presence of memory deficits, the undersigned finds the claimant's limited mental health treatment, his ability to remember medical appointments, medications, and other important factors, and the generally normal mental findings in the available record suggest the claimant has found ways to accommodate his memory difficulties and the results of the formal testing are not indicative the claimant's actual functional limitations.[65]

He then went on to find Dr. Genthe's opinion not persuasive and articulated the following reasoning:

The undersigned finds the medical opinion of Thomas Genthe, PhD, a consultative examining psychologist, is not persuasive (Ex. B4F/18-22 &B9F). Dr. Genthe's formal memory testing does support the marked limitations he identified in his opinion. However, as previously noted the moderate performance on the memory portion of the mental status examination combined with the claimant's limited mental health treatment and normal findings in the available records are not consistent with the marked limitations identified by Dr. Genthe.[66]

---

[65] AR 33.

[66] AR 36.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Plaintiff argues that the ALJ erred in both his assessment of the supportability factor and the consistency factor. The Court agrees. Initially, the Court notes that the way the ALJ addressed the objective test findings of Dr. Genthe's formal testing leaves the Court unclear as to whether the ALJ adequately considered the significance of the objective testing.

The Court concludes that both the ALJ's supportability evaluation and consistency evaluation are lacking and are not supported by substantial evidence. The ALJ's reasoning regarding the supportability of Dr. Genthe's reasoning is lacking. As noted, the ALJ failed to articulate any consideration of the nature of the complex and detailed objective testing performed and instead pointed a "moderate performance" on the mental status examination. First, the ALJ does not explain why the results of a simple and basic mental status examination would be more reliable than those of a formal, multi-part testing given over the course of several hours. Moreover, Plaintiff's performance on the mental status examination was not moderate. After a brief five-minute delay, he was only able to remember 2 of 4

objects.[67] When asked what he did the prior day he was only able to answer that he "watched TV" without any detail as to when he watched TV or what shows he watched.[68]  Plaintiff was unable to do simple math, perform serial 3's, or interpret proverbs.

The ALJ's consideration of the consistency factor is missing altogether.  The ALJ simply alludes to "generally normal finding in the available record" without identifying even one specific record. There are multiple reports in the record that are consistent with Dr. Genthe's findings.  When Plaintiff filed his claim, he was assisted by SSA staff member Ms. Lynch, who stated the following observations:

> He participated in the appointment. He did take a deep breath at times and has Reactive Airway Disease which hinders breathing as well as heart issues. He appeared to be in pain when sitting, standing up and walking. He would lean to one side in chair, grimace. Andrew was pleasant and polite. He did struggle with recalling dates, timelines, order of events. He was in a motorcycle accident in which suffered brain injury. He did have eye contact but minimal, would often look down as he sat with right hand gripping arm of chair.[69]

---

[67] AR 860.

[68] *Id.*

[69] AR 372.

DISPOSITIVE ORDER - 22

There are multiple treatment records from multiple providers that indicate that Plaintiff's memory was "fair" on examination.[70] On September 12, 2022, Barbara Wilkinson, AAR, found on mental status examination that Plaintiff's short-term and long-term memory were "fair."[71]  On December 12, 2022, Plaintiff presented to Paula Marston in a disheveled state with "fair" memory.[72] On January 18, 2023, Plaintiff presented to Ms. Marston in a clean state, with good memory but had minimal eye contact, low voice, flat affect, and limited mobility with pain demonstrated on sitting and rising.[73]

On January 31, 2023, Plaintiff was noted to have a fair memory.[74] On June 22, 2023, Plaintiff presented to Barbara Wilkinson for

---

[70] AR 816, 888, 893, 897, 918-924.

[71] AR 816.

[72] AR 888.

[73] AR 893.

[74] AR 897.

assessment.[75] Plaintiff reported feeling anxious and on edge daily, taking tranquilizers to sleep, and being irritable.[76] On mental status examination, he was uncooperative, agitated and appeared bizarre; he had fair long-term and short-term memory; he had a lack of insight; and he had an angry and hostile mood.[77]

The ALJ's sole remaining reason for discrediting Dr. Genthe's opinions—that Plaintiff had limited treatment—fails as well. It was Dr. Genthe's opinion that Plaintiff's insight into the need for medication and treatment was itself impaired and his insight into the need for treatment was "fair."[78]

---

[75] AR 918-924.

[76] AR 919.

[77] AR 919-920.

[78] AR 861-862. Also, *See Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014) (holding an ALJ may not reject a claimant's symptom testimony based on a lack of treatment if "the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions").

The Court concludes that a remand is warranted for the ALJ to properly evaluate Dr. Genthe's opinions with due consideration of both the supportability and consistency factors.

### 3.    PA-C Aronsohn's Opinion

Because the Court has found that remand is warranted, it will address this issue briefly.

Plaintiff argues that it is unclear whether the ALJ properly considered the consistency of the opinions of Dr. Genthe and PA-C Aronsohn. As noted above, it is unclear to the Court whether the ALJ correctly considered the results of objective testing administered by Dr. Genthe when evaluating his opinion. Because the ALJ failed to adequately address that issue, his error has also affected his ability to consider the consistency of Dr. Genthe's findings and opinions to those of PA-C Aronsohn. To the extent that the Court has already found remand to be warranted, this issue will be addressed on remand.

**B.    Symptom Reports:  This issue is moot.**

Plaintiff argues that the ALJ failed to provide valid reasons for discounting his subjective complaints.  Because the Court has remanded the case with direction that the ALJ re-evaluate the medical opinions and Plaintiff's impairments, the ALJ will be required to re-evaluate Plaintiff's symptom reports.  This issue is therefore moot.

**C.    Step Five:  Plaintiff established consequential error.**

Plaintiff argues the ALJ failed to properly include all his limitations into the RFC and the hypothetical presented to the vocational expert. This argument depends on his contentions that the ALJ erred in evaluating the medical opinions as described above. As explained above, Plaintiff met his burden in showing that the ALJ erred in analyzing the medical opinions.

**D.    Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or

simply to award benefits, is within the discretion of the court."[79] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[80]

The Court finds that further development is necessary for a proper disability determination. Here, it is not clear what, if any, additional limitations are to be added to the RFC. As noted above, on remand the ALJ is to properly consider the medical opinions, Plaintiff's alleged impairments, and Plaintiff's symptom reports.

## IV.    Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary

---

[79] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[80] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*  379 F.3d at  595  ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

support—her evaluation of the medical opinions, Plaintiff's impairments, and Plaintiff's subjective complaints.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 14 and 17**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 28th day of April 2025.

_Edward F. Shea_

EDWARD F. SHEA
Senior United States District Judge